THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

Railroad crossings — New York (city of) — street crossings over the tracks of the New York Central railroad, formerly Harlem railroad, must be made under and in compliance with the provisions of the General Railroad Law, the Harlem railroad depression agreement being abrogated by the Railroad Law.

Chapter 754 of the Laws of 1897 (now Railroad Law, Cons. Laws, ch. 49, §§ 90–94) provides a general and uniform law for new streets and crossings over railroad tracks and repealed chapter 62 of the Laws of 1853, and hence the so-called Harlem railroad depression agree-

ment, entered into by the Harlem Railroad Company and the city of New York under the authority of chapter 721 of the Laws of 1887, as to street crossings of the Harlem railroad, is no longer applicable, and crossings now are and must be made under the provisions of the Railroad Law.  Under this law, the cost of carrying East One Hundred and Sixty-seventh street over the railroad, under proceedings instituted in 1904, must be shared equally by the city and by the railroad company, each paying one-half thereof.

*N. Y. C. R. R. Co.* v. *City of New York*, 181 App. Div. 931, reversed.

(Argued June 11, 1918; decided July 12, 1918.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 7, 1918, affirming a judgment in favor of defendant entered upon a dismissal of the complaint at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Alexander S. Lyman, George H. Walker* and *Frederick L. Wheeler* for appellant. · The board of railroad commissioners from July 1, 1897, the date of taking effect of the Grade Crossing Law, to July 1, 1907, and the public service commission since July 1, 1907, the date of taking effect of the Public Service Commissions Law, has had sole and exclusive jurisdiction to determine the manner in which One Hundred and Sixty-seventh street, a public highway in the borough of The Bronx, should be carried across the tracks of the New York and Harlem Railroad Company, and to determine the height, length and material of the bridge or structure by which such highway should be carried across such railroad and the length, character and grades of approaches thereto.  (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *City of Niagara Falls*, 158 N. Y. 410; *Brush* v. *N. Y., N. H. & H. R. R. Co.*, 162 App. Div. 731; *N. Y. C. & H. R. R. R. Co.* v. *City of Buffalo*, 200 N. Y. 113;

*Matter of City of New York,* 204 N. Y. 465; *Matter of Town Bd. of Royalton,* 138 App. Div. 412.) The Harlem depression agreement was abrogated by the Grade Crossing Act. (*People ex rel. City of Niagara Falls* v. *N. Y. C. & H. R. R. R. Co.,* 158 N. Y. 410; *Matter of Ludlow Street,* 172 N. Y. 542; *N. Y. C. & H. R. R. R. Co.* v. *City of Buffalo,* 128 App. Div. 373; 200 N. Y. 113; *Chicago, Burlington & Quincy R. R. Co.* v. *Nebraska,* 170 U. S. 57; *Pratt Institute* v. *City of New York,* 183 N. Y. 151; *Matter of City of New York* v. *N. Y. C. & H. R. R. R. Co.,* 168 App. Div. 6; 216 N. Y. 722; *Matter of Boston & Albany R. R. Co.,* 64 App. Div. 257; 170 N. Y. 619; *N. Y. & N. E. R. R. Co.* v. *Bristol,* 151 U. S. 556; *Matter of N. Y. C. R. R. Co.,* 177 App. Div. 444.)

*William P. Burr,* Corporation Counsel (*John P. O'Brien* and *Vincent Victory* of counsel), for respondent. The provisions of the Railroad Law do not render invalid the grade elimination agreement between the city of New York and the New York and Harlem River Railroad Company and the New York Central Railroad Company. (*Ithaca* v. *T., etc., R. R. Co.,* 145 App. Div. 675; *S. P. Assn.* v. *Mayor, etc.,* 152 N. Y. 257; *Bush* v. *Bd. of Supervisors,* 159 N. Y. 212; *People ex rel. Waddy* v. *Partridge,* 172 N. Y. 305; *Matter of Mahon* v. *Bd. of Education,* 171 N. Y. 263; *People ex rel. Simpson* v. *Wells,* 181 N. Y. 252; *People ex rel. B. Sav. Bank* v. *Feitner,* 191 N. Y. 88; *T. H. Dept.* v. *McDevitt,* 165 App. Div. 367; *People* v. *Jaehne,* 103 N. Y. 182; *People* v. *Martino,* 210 N. Y. 412.) The action of the public service commission in providing in its order that the expense of constructing the One Hundred and Sixty-seventh street bridge shall be shared by the city does not have the effect of imposing the burden upon the city. (*People ex rel. S. S. Traction Co.* v. *Willcox,* 196 N. Y. 212.)

[224 N. Y.]          Opinion, per Andrews, J.          [July,

Andrews, J.   Chapter 62 of the Laws of 1853 authorized a municipal corporation to lay out any street across railroad tracks without compensation to the railroad company and imposed upon the latter the duty of carrying the street across the tracks " as shall be most convenient and useful for public travel." With this act in force, chapter 721 of the Laws of 1887 empowered the department of public parks of the city of New York to agree with the New York and Harlem Railroad Company upon plans for the depression of its tracks through the twenty-third and twenty-fourth wards of the city and for carrying any streets in said wards across, on, over or under such tracks. When the plans were agreed upon they were to be executed forthwith by the railroad company at its own expense. Evidently this act was desired by both parties. For both the elimination of grade crossings would be a benefit. It contemplated plans to be presently agreed upon and work to be presently done. It was not intended to limit the authority conferred upon the municipality by the act of 1853.

Early in 1888, under this act, the city and the railroad corporation entered into a contract since known as the Harlem depression agreement. It recited that it was made to carry out the purposes of the statute and that plans to that end had been adopted. Certain designated streets were to be carried over the tracks upon bridges of a certain character. The work was to be begun within a month and prosecuted, at the expense of the company, with diligence until completed. No intermediate avenue was to cross the tracks " except as hereinafter provided." But additional crossings " shall be made and maintained by the New York and Harlem Railroad Company whenever so directed by the Department of Public Parks, said crossings to be made in the manner and at such points as indicated by the said

Department, but over such streets only as are now laid out and opened and may be laid out and opened across said railroad."

This last clause added nothing to and subtracted nothing from the rights of the parties to the agreement. What the statute authorized was the adoption of completed plans and their execution. Under its terms no agreement could impair the right of the city to lay out new streets across the tracks. Nor could it amend the other provisions of the act of 1853. No effort was made to do so. No additional burden was imposed on the company. At most there was an attempt to give to the park department discretion to determine whether if, in the future, a street were laid out across the right of way it would " be most convenient and useful for public travel " that the crossing should be at grade or above or below. There was no need of an agreement as to the cost of such future crossings. That was already provided for by statute.

After much discussion of the problem of grade crossings the legislature finally passed an act regulating the entire subject. (Laws of 1897, chapter 754, and its various amendments; now Railroad Law, §§ 90–94.) Where it is intended to lay out a new street across railroad tracks notice must be given to the company. If, after a hearing, it is still thought by the municipal authorities to be desirable, the board of railroad commissioners (now the public service commission) decide whether it shall pass at grade or above or below. If it decides for an overhead crossing it fixes the character of the bridge to be used. This work is to be done and paid for by the railroad company, subject to the supervision and control of the commission. Before letting any contract, plans, specifications and an estimate of the expense must be submitted to it for approval. So must the contract itself. It must approve the work when finished. Then

an accounting is to be had of the expense and one-half paid by the municipality. Chapter 62 of the Laws of 1853 was repealed.

East One Hundred and Sixty-seventh street was within the territory covered by the depression agreement. It ran east and west from the Harlem tracks but did. not cross them. Nor was it one of the streets mentioned in the agreement. Beginning with the service by the city in September, 1904, of a notice upon the appellant, which is the lessee of the Harlem Company, of a hearing as to its intention of carrying the street across the tracks, various proceedings were had in the matter in strict conformity to the Railroad Law as it then existed. They resulted in the determination of the public service commission that the street should pass over the tracks on a bridge built upon plans agreed upon by the parties, which the commission approved. All subsequent proceedings also complied with the act and the bridge was built by the appellant at a cost of something over $41,000. The company then, as appears by the defendant's answer, demanded an accounting with the city, but it was refused. It then presented a claim to the city for one-half the expense. This claim has never been paid, and the present action results. The trial judge dismissed the complaint on the ground that under the Harlem depression agreement the whole cost must be borne by the appellant. With him the Appellate Division agreed.

For two reasons we cannot reach the same conclusion. As we interpret the agreement it is not a contract that for all time to come, whenever a street in the territory described is carried across the Harlem tracks, whatever changes may be made by statute, the company is to bear the entire expense. The paragraph upon which the city relies is simply the recognition of the rule that prevailed under the act of 1853. Anything further was not

authorized by the statute under which the agreement was made.

Even should this paragraph receive a broader construction, still we reach the same result.   As we have seen, the act of 1887 authorized the department of parks of the city of New York and the company to agree on plans for lowering the tracks and carrying streets across them at the expense of the latter.   The agreement was made; the streets affected were named; the kind of bridge to be built was described.   Finally, if the respondent is correct, it was agreed that if the department desired other street crossings, the company should make them, at its own expense, in the manner indicated by the department.

Under the act of 1897 as to future crossings the whole procedure was altered.   The department could no longer designate a crossing arbitrarily.   It could only be decided upon by the city authorities after the company had been heard.   The department could no longer determine the character of the crossing.   That was for the board of railroad commissioners.   This body, if an overhead crossing was to be made, fixed the character of the bridge.   It was no longer the subject of agreement between the parties.   The work of construction was not left in the hands of the company.   All plans, all bids, all contracts were subject to the approval of the commissioners.   Whether the work was properly done was to be decided by them.

Under such a change of circumstances the Harlem depression agreement is no longer applicable.   Every provision contained in it as to when and how crossings shall be made is altered.   So is the whole procedure. Crossings now are and must be made not under its provisions but under the provisions of the statute.   Clearly its further provision as to the cost of such crossing must control.   It is a general act, intended to regulate the

whole subject and any special act, confined to a restricted locality, and any agreement looking to the future in so far as inconsistent with it is superseded. As against the state, neither by the act of 1887 nor by the agreement did the city acquire any contractual rights, safe from interference, when the legislature decided that as to future crossings some different rule should be applied. (*Chicago, B. & Q. R. R. Co.* v. *Nebraska*, 170 U. S. 57.)

The judgment of the Appellate Division and of the Trial Term must be reversed. As the findings require judgment for the plaintiff and as there is no dispute as to the amount involved, judgment should be directed in its favor for the sum of $20,763.60. The plaintiff might be entitled to interest on this sum from February 23d, 1912, the date when an accounting was refused by the city, but as in its complaint and in its brief it limits its demand to October 27th, 1913, we allow interest from that date. We also give it costs in all courts.

Hiscock, Ch. J., Collin, Hogan, Cardozo, Pound and Crane, JJ., concur.

Judgments reversed, etc.